Mary GLOVER, et al., Plaintiffs,

v.

Perry JOHNSON, et al., Defendants.

No. 77–CV–71229.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 21, 1997.

Deborah LaBelle, Detroit, MI, for Plaintiffs.

Leo Friedman, Asst. Atty. Gen., Mich. Dept. of Corrections, Lansing, MI, for Defendants.

## OPINION AND ORDER DENYING A STAY OF THE REMEDIAL PLAN AND COURT ORDERS

FEIKENS, District Judge.

### I. Summary

Defendants have moved for the immediate termination of remedial plans and court orders in effect in this case, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), Pub.L.No. 104–134, which amends 18 U.S.C. § 3626. Specifically, defendants argue that the provisions governing termination of prospective relief found at 18 U.S.C. § 3626(b)(1),(2), and (3) require termination of relief in this case.

While not stated in their motion, defendants argue in their brief that the automatic stay provision of the PLRA, § 3626(e)(2), is triggered by the filing of their motion for termination of relief. Thus all relief in this case would automatically be suspended on February 22, 1997 (that is, 30 days after the filing of defendants' brief on January 23, 1997) unless a final order ruling on the substance of defendant's motion were issued.

Because I find, in accord with my previous ruling in the companion case *Hadix v. Johnson*, 933 F.Supp. 1360 (E.D. Mich.1996), that the automatic stay provision of the PLRA is unconstitutional, the automatic stay provision of 18 U.S.C. § 3626(e)(2) shall not be given effect and relief shall not be suspended. I will issue an final opinion and order on the merits of defendants motion to terminate relief under §§ 3626(b)(1), (2), and (3) after full hearing and argument. The fact that the automatic stay section of the PLRA would force a hasty judgment on this important question is but one indication of that provision's failings.

### II. Background

The history of this case is too long to set forward here in any detail. The following

synopsis is offered only to demonstrate that the remedial plans which defendants seek to terminate constitute court-ordered relief, accompanied by judicial findings of fact and law. As will be concluded in section III, below, a stay of such court-ordered relief as provided by § 3626(e)(2) violates the separation of powers principles embodied in Article III of the U.S. Constitution because, in effect, such stay overturns the final judgment of a court.

This case originated nearly twenty years ago, when female inmates in the Michigan prison system filed lawsuits—ultimately consolidated and certified as a single class action—claiming denial of access to courts and denial of constitutional equal protection. After a hearing on the merits, this court found violations of both of those constitutional rights, and ordered defendants to submit a compliance plan. *Glover v. Johnson*, 478 F.Supp. 1075 (E.D.Mich.1979). After extensive negotiation, the parties reached agreement on a compliance plan, which this court incorporated into a final order. *Glover v. Johnson*, 510 F.Supp. 1019 (E.D.Mich.1981).

As the U.S. Court of Appeals for the Sixth Circuit has observed, "Neither the 1979 nor the 1981 order was appealed, with the result that the finding of equal protection violations is the law of the case." *Glover v. Johnson*, 934 F.2d 703, 706 (6th Cir.1991).

Compliance with the 1981 order was hotly contested, resulting in a 1986 injunction ordering higher education courses in two women's correctional facilities and a 1987 order that a court administrator be appointed to oversee educational programs for female inmates. *Glover v. Johnson*, 659 F.Supp. 621, 623 (E.D.Mich.1987).

Initially the court of appeals vacated the 1986 injunction, and it set aside the order appointing an administrator, remanding for further fact findings regarding compliance and the least intrusive remedy for noncompliance. The court of appeals went on to affirm the district court's decision on remand, *Glover v. Johnson*, 721 F.Supp. 808 (E.D.Mich.

1989), to require the appointment of a special administrator, holding that the district court had made requisite fact findings and had not abused its discretion. 934 F.2d at 717. The appellate court also held that this court had abused its discretion in certain contempt findings, but upheld other contempt findings.[1] *Id.* Defendants subsequently appointed a special administrator, Nancy Zang, which was approved by court order on August 13, 1991. The court also appointed a court monitor, Dr. Rosemary Sarri, in an August 27, 1991 order.

This court's 1989 opinion and order finding defendants in contempt, 721 F.Supp. 808, as later affirmed in relevant part by the court of appeals, 934 F.2d at 717, required "the development and implementation of a remedial plan." 721 F.Supp. at 851. Pursuant to the 1989 order, defendants in December 1991 submitted a Remedial Plan to address violations the court had identified.

The title initially given to the plan as submitted by defendants was "A Remedial Plan as Required by the 1989 Court Order Issued in *Glover, et al v. Johnson, et al.*" The introduction to defendants' plan acknowledges that the plan was "developed and submitted by the Michigan Department of Corrections based on the 1989 order of the Court. . . ." The introduction also states, "The purpose of this plan is to remedy Constitutional violations found by the Court in its 1989 order."

Plaintiffs accepted this plan, and this court enforced it in subsequent orders. For example, on August 18, 1992 I granted defendant's request to revise time lines contained in the remedial plan, and established new—and enforceable—deadlines for action in various aspects of educational and vocational programming for women prisoners.

Thus the relief which defendants seek to suspend under the PLRA's automatic stay provision is not a negotiated settlement, but rather court-ordered relief based (as defen-

---

**1.** The district court was held to have abused its discretion in contempt findings with regard to work pass and vocational programming, since those were not in the court's 1981 order, and regarding wage disparity. The district court's contempt findings relating to other remedial orders was upheld. 934 F.2d at 717.

dants admit in the text of the plan) on judicial findings of constitutional violation.

### III. Automatic Stay under the PLRA

Because the automatic stay provision of the PLRA would have the effect of overturning a judgment of court established under Article III of the United States Constitution, that provision clearly violates constitutional separation of powers principles. The suspension of relief would cause immediate harm to women prisoners, and would have the effect of reversing court-ordered measures based on judicial findings of violation of federal constitutional rights.

I continue to adhere to the analysis contained in my July 5, 1996 opinion denying a stay under the same provision of the PLRA. *Hadix v. Johnson*, 933 F.Supp. 1360 (E.D.Mich.1996). The provision does not merely limit the jurisdiction of Article II courts, but rather it, effectively overturns the final orders of those courts. This flatly violates the command of Article III, Section 1 of the Constitution "that the Judicial Power of the U.S. shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish".

I note here, as I did in the *Hadix* decision, Justice Storey's landmark interpretation of Article III:

> If, then, it is a duty of congress to vest the judicial power of the United States, it is a duty to vest the whole judicial power. The language, if imperative as to one part, is imperative as to all. If it were otherwise, this anomaly would exist, that congress might successively refuse to vest the jurisdiction in any one class of cases enumerated in the constitution, and thereby defeat the jurisdiction as to all; for the constitution has not singled out any class on which congress are bound to act in preference to others.

*Martin v. Hunter's Lessee*, 1 Wheat. 304, 4 L.Ed. 97 (U.S.1816). I also repeat the observation of two of the original supreme court justices, made when they sat as judges of a circuit court, that Congress may not infringe, even temporarily, on decisions of the judiciary:

> And we beg leave to add, with all due deference, that no decision of any court of the United States can, under any circumstances in out opinion, agreeable to the constitution, be liable to a revision, *or even suspension*, by the legislature itself, in whom no judicial power of any kind appears to be vested, but the important one relative to impeachments.

*Hayburn's Case*, 2 Dall. 408, 1 L.Ed. 436 (U.S.1792) (emphasis added).

The United States Department of Justice agrees that if 18 U.S.C. § 3626(e)(2) is construed to effect an automatic stay without judicial action, or to require nondiscretionary judicial order of a stay, it would violate the Constitution "because the statute would amount to a legislative suspension of a judgment permitting no analysis by the courts of the relevant facts or applicable substantive law." Memorandum of Law of the United States of America with Respect to the Constitutionality of Certain Provisions of the Prison Litigation Reform Act ("Justice Department Memorandum") at 35, citing *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871).

The Department of Justice ("DOJ") presents a forceful analysis of the provision's unconstitutionality so construed. "Congress lacks the power to dictate absolutely that a judgment already rendered by an Article III court be altered or suspended, as the automatic stay might be read to require." Justice Department Memorandum at 35, citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

The DOJ notes that "the proper response to a motion to terminate an existing injunction is orderly briefing and presentation of the factual and legal issues, sometimes including an evidentiary hearing...." and that "it may in some cases simply be impossible for a court to decide the motion responsibly within thirty days." Justice Department Memorandum at 36–37. "'Once the jurisdiction of the court has been invoked, that court has an obligation to exercise its jurisdiction meaningfully.' Congress cannot abridge that judicial obligation by forcing the court into a schedule that makes it impossible for the court to consider the relevant factual and

legal issues." Justice Department Memorandum at 37, quoting *United States v. State of Michigan,* 18 F.3d 348, 351 (6th Cir.1994).

Nevertheless, the DOJ urges the court to adopt a tortured interpretation of § 3626(e)(2) in order to save its constitutionality. The DOJ argues the provision should be seen as permitting the courts to exercise discretion to suspend, alter, or terminate relief. In other words, "the relief remains in effect until the court either grants a stay under subsection (e)(2)(A) or terminates the relief." Justice Department Memorandum at 39.

This clearly contradicts the plain language of the statute. The DOJ acknowledges that "the reading we propose is contrary to an (sic) literal interpretation of the language of the provision. The provision's use of the word 'automatic' suggests that stays are to take effect without judicial discretion. Moreover, Section 3626(e)(2)(B)'s provision that the automatic stay ends 'on the date the court enters a final order ruling on the motion [to terminate]' may indicate that congress intended issuance of a final order to be the only method by which a court could avoid an automatic stay." Justice Department Memorandum at 41.

Despite its incisive analysis of the text, the DOJ urges the court to avoid an "over-literal" reading of the provision, and asserts that the court has a duty to adopt a reading which will save its constitutionality. Justice Department Memorandum at 42, citing *Rust v. Sullivan,* 500 U.S. 173, 190, 111 S.Ct. 1759, 1770-71, 114 L.Ed.2d 233 (1991).

To adopt the DOJ's reading of § 3626(e)(2) would not be to impose a non-literal interpretation, but rather one which flatly contradicts the text of the statute. This I am not at liberty to do. The fact that the DOJ's interpretation renders the provision essentially meaningless is further evidence that such an interpretation could not have been intended by Congress. A court is always free to suspend relief on the motion of a party. To provide that the court may exercise such discretion *sua sponte* during the thirty days following a motion for termination under § 3626(b) would be an odd exercise indeed.

Rather, it is apparent that the intent and effect of § 3626(e)(2) is to overturn a court order, in violation of Article III of the United States Constitution.

THEREFORE, the prospective relief that has been awarded to plaintiffs pursuant to the the remedial plan and other court orders will not be stayed pending a determination of defendants' motion to terminate relief.

IT IS SO ORDERED.