IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20233
_____


DAVID R. RUIZ; ET AL.,

                                        Plaintiffs-Appellees,

UNITED STATES OF AMERICA,

                                Intervenor Plaintiff-Appellee

                        versus

GARY JOHNSON, Director, Texas Department of
Criminal Justice, Institutional Division;
ALLEN B. POLUNSKY; CAROLE S. YOUNG;
JOHN R. WARD; JOHN DAVID FRANZ; NANCY PATTON;
CAROL S. VANCE; PATRICIA DAY; ALFRED C.
MORAN; ALFRED M. STRINGFELLOW,

                                Defendants-Appellants.

*********************************************************************

_____

No. 98-20841
_____


DAVID R. RUIZ; ET AL.,

                                        Plaintiffs-Appellees,

                        versus

UNITED STATES OF AMERICA,

                                Intervenor Plaintiff-Appellant

                        versus

GARY JOHNSON, ETC.; ET AL.,

                                Defendants.
_____

            Appeals from the United States District Court for the
                  Southern District of Texas, Houston
_____
                        June 25, 1999

Before JOLLY, WIENER, and PARKER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     This appeal arises from the efforts of Texas officials to terminate the federal consent orders that have in substantial part governed Texas prisons for almost twenty-five years. Today, we have before us two separate issues: first, mootness--whether an appeal of a district court order holding the automatic stay provision of the Prison Reform Litigation Act ("PLRA"), 18 U.S.C. § 3626(e)(2), unconstitutional has been rendered moot by a subsequent order of the district court addressing the merits of the state's claim and, second, whether the district court erred in finding the automatic stay provision, § 3626(e), unconstitutional. The PLRA, among other things, was designed by Congress to address unduly burdensome injunctive judgments against prisons. The act effectively encourages state and local governments to seek termination of such judgments. When these cases come to the district court, § 3626(e) requires the court, if it does not rule

                            2

on a motion to terminate relief within thirty days, to issue an automatic stay of all court orders granting relief related to prison conditions. In the case at hand, the district court ruled that § 3626(e) is unconstitutional because such congressional involvement in specific court orders violated the Separation of Powers doctrine and the due process rights of the parties. Before we issued an opinion with respect to an appeal of this ruling, the district court ruled on the motion to terminate. We conclude that the district court's subsequent ruling does not render the issue on appeal moot. Turning then to the merits of the appeal, we conclude that the district court erred in its interpretation of the statute and that, under the correct interpretation, § 3626(e) is constitutional.

I

This suit was originally brought in 1974 in the Southern District of Texas by plaintiff-appellants, a class of inmates confined in various institutions operated by the Texas Department of Corrections (the "prisoners"), challenging the constitutionality of the conditions of their confinement pursuant to 28 U.S.C. § 1983. After the district court found that the prison conditions violated the Eighth and Fourteenth Amendments, the parties submitted to the court a proposed final judgment that set forth the relief the prisoners were to be granted with regard to such issues as population limits, use of force, and the Prisoners' access to the courts. Although the district court through interim orders and

consent decrees has exercised authority over Texas prisons for almost twenty-five years, it was not until 1992 that the district court entered an order approving the parties' proposed final judgment.

In March 1996, the defendant-appellants--the Director of the Department of Criminal Justice and members of the Texas Board of Criminal Justice ("prison officials")--filed a motion to vacate the 1992 Final Judgment pursuant to Fed. R. Civ. P. 60(b)(5).  One month later, the President signed into law the Prison Litigation Reform Act ("PLRA" or the "Act").  18 U.S.C. § 3626.  The Act provides that a district court should not grant prospective relief--defined as "all relief other than compensatory money damages," 18 U.S.C. § 3626(g)(7)--in a prison litigation case "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).

The Act similarly provides that a defendant is entitled to the immediate termination of any prospective relief that was ordered prior to the enactment of the PLRA "if the relief was approved or granted in the absence of a finding by the court that the relief" satisfies the PLRA's new tripartite test, 18 U.S.C. § 3626(b)(2), unless the court makes written findings based on the record that prospective relief remains necessary and meets the Act's requirements.  18 U.S.C. §3626(b)(3).

4

The PLRA, as originally enacted, further contained an automatic stay provision, which stated that "[a]ny prospective relief subject to a pending motion [for termination] shall be automatically stayed during the period . . . beginning on the 30th day after such motion is filed . . . and ending on the date the court enters a final order ruling on the motion."  18 U.S.C. § 3626(e)(2), superseded by Pub. L. No. 105-119 § 123(b).

In September 1996, the defendants filed a supplemental motion to vacate the 1992 Final Judgment, in which they argued that the district court had not made the necessary findings under § 3626(b)(2) to sustain the prospective relief granted in the 1992 Final Judgment.[1]  The district court entered an order finding that it was impossible for the court to resolve the defendants' motions within the 30-day period specified by § 3626(e), but that it would not stay the 1992 Final Judgment because the PLRA's automatic stay provision was an unconstitutional violation of the Separation of Powers doctrine and due process of law.  The district court also stated in the order that it would not rule on the motions to terminate until it had conducted an evidentiary hearing.

The prisons officials appealed the district court's refusal to rule immediately on their motion to terminate relief, but did not appeal the district court's ruling regarding the constitutionality

---

[1]The district court approved the 1992 Final Judgment under the then proper standard, which is applicable to class actions generally.

5

of the PLRA's then-existing automatic stay provision.  In February 1997, the Prison officials filed for a writ of mandamus to order the district court to terminate the 1992 Final Judgment under § 3626(b)(2) without an evidentiary hearing, which was consolidated with its appeal.  In August 1997, this court held that (1) it would not review the district court's constitutional holding; (2) the remainder of the district court's order was not appealable; and (3) the prison officials were not entitled to the immediate termination of the previously ordered prospective relief.  Ruiz v. Scott, 124 F.3d 191 (5th Cir. 1997).  The court did note, however, that, consistent with the PLRA, the district court should rule promptly on the officials' termination motion.

In September 1997, the defendants then filed in the district court (1) a motion for a prompt ruling on their supplemental motion to vacate; and (2) a motion for a ruling on the motion for stay, asserting that the court's earlier ruling was not made in response to a request for a stay.  While the defendants' motions were pending, Congress amended the stay provision of the PLRA to read as follows:

Procedure for motions affecting prospective relief.

(1) Generally.  — The court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions.  Mandamus shall lie to remedy any failure to issue a prompt ruling on such a motion.

(2) Automatic Stay. — Any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period —

6

> (A)(I) beginning on the 30th day after such motion is filed, in the case of a motion made under paragraph (1) or (2) of subsection (b); * * *; and
>
> (B) ending on the date the court enters a final order ruling on the motion.
>
> (3) Postponement of automatic stay. — The court may postpone the effective date of an automatic stay specified in subsection (e)(2)(A) for not more than 60 days for good cause. No postponement shall be permissible because of general congestion of the court's calendar.
>
> (4) Order blocking the automatic stay. — Any order staying, suspending, delaying, or barring the operation of the automatic stay described in paragraph (2) (other than an order to postpone the effective date of the automatic stay under paragraph (3)) shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1) of title 28, United States Code, regardless of how the order is styled or whether the order is termed a preliminary or a final ruling.

18 U.S.C. § 3626(e)(1-4). Congress provided that the Amended Stay Provision "shall take effect upon the date of the enactment of this Act and shall apply to pending cases."

In January 1998, the district court ruled that, like the original stay provision, the Amended Stay Provision is also unconstitutional because it "would encroach upon the powers of the judiciary, overturn a judgment of an Article III court, and deprive parties of a vested property right without due process of law" ("January Order"). The district court further concluded that "the automatic stay provision suspends valid judgments based on the mere act of filing a motion" in violation of the holding of United States v. Klein, 80 U.S. (13 Wall.) 128 (1871), that a legislative

7

rule that mandates the outcome of a case encroaches upon the power reserved for the judiciary.

The United States, which had intervened as a plaintiff in 1974, filed a motion for reconsideration of the court's January Order, in which it advanced an interpretation of the Amended Stay Provision that would avoid the district court's constitutional concerns and allow the district court to delay the stay under its inherent equitable powers (as the government puts it, the district court retains the equitable power to "stay the stay."). In June 1998, the court denied the government's motion, rejecting its proposed construction of the stay provision of the PLRA ("June Order").

The prison officials then filed another petition for mandamus to order the district court to rule immediately on the officials' September 1996 termination motion. In December 1998, this court declined to order the district court to rule instanter, as the district court had scheduled an evidentiary hearing for January 21, 1999. The court, however, chastised the district court for having delayed the process and ordered the court to rule on the prison officials' termination motion within a reasonable time after beginning the evidentiary hearing and, in no event, later than March 1, 1999. In re Scott, 163 F.3d 282 (5th Cir. 1998).

The prison officials timely appealed the district court's January Order (No. 98-20233). The United States timely appealed the district court's June Order (No. 98-20841). The parties argued

8

the case to this panel on February 2, 1999.  On March 1, 1999
("March Order"), the district court issued an order denying the
prison officials' motion for termination, finding that the PLRA's
termination provisions were unconstitutional and that, even if they
were constitutional, the prisoners nevertheless would be entitled
to relief.

Because the district court ruled on the underlying motion for
termination, any ruling by us on the automatic stay provision
arguably will have no effect on the outcome of the case.  We
therefore requested supplemental briefing from the parties as to
whether the district court's March 1999 order rendered the appeal
moot.

II

In order to have jurisdiction under Article III of the
Constitution, we must have before us an actual case or controversy
at the time we issue our decision.  United States Parole Comm'n v.
Geraghty, 445 U.S. 388, 396 (1980) (noting that a case becomes moot
"'when the issues presented are no longer "live" or the parties
lack a legally cognizable interest in the outcome.'") (quoting
Powell v. McCormack, 395 U.S. 486, 496 (1969)).  In this case, all
of the parties agree that the March Order denying the motion for
termination prevents the appellants from obtaining any meaningful
remedy at this time[2] with respect to the district court's refusal

_____

[2]Because the parties will appeal the March Order, it is
possible that, if a subsequent panel reverses that order, the

9

to apply the automatic stay. The parties further agree that an appeal of the March Order will only address the termination provision, 18 U.S.C. § 3626(b), and will not address the automatic stay provision, 18 U.S.C. § 3626(e).

The parties disagree, however, over whether the prison officials retain a cognizable legal interest in the outcome of the instant appeal. The prison officials argue that the controversy at issue here--over the constitutionality of the stay provision--fits into an exception to the mootness doctrine for actions that are "capable of repetition yet evading review." Murphy v. Hunt, 455 U.S. 478, 482 (1982). The prison officials argue that the case falls into the exception and that we should rule on the appeal; in addition, they argue that we should also rule on the constitutional issue involved in the appeal of the March Order. To accomplish this objective, the prison officials have filed a motion seeking to bifurcate its appeal of the March Order and consolidate it with the current appeal.[3]

The prisoners argue that this case does not fall into the exception and that we should therefore dismiss the appeal. The government argues that the case may fit into the exception, but

parties in this case could find themselves in essentially the same posture as they were before the district court issued its March Order. If, at that point, the district court refused to permit the operation of the automatic stay under the PLRA, the parties could be entitled to a remedy.

[3]We hereby deny the prison officials' motion to bifurcate and consolidate.

that we should hold the appeal in abeyance pending the appeal of the March Order. After consideration of the arguments presented, we hold that this controversy falls into the category of controversies that are capable of repetition yet evading review.

The exception is limited to a situation where "two elements combine[]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). We address each element in turn.

A

Both the prison officials and the government seem to agree that the action at issue here--the district court's refusal to apply the automatic stay provision--is in its duration too short to be fully litigated prior to its cessation or expiration. The prison officials assert, and the government seems to agree, that a district court can avoid the requirement of the automatic stay provision by ruling that the provision is unconstitutional and then ruling on the motion before we rule on the appeal.

The prisoners disagree, arguing that it is not clear that the prison officials could not have expedited their appeal in such a way that the issue could have been resolved before the district court ruled on the motion to terminate. The prisoners point to the prison officials' alleged delay in appealing the district court's

11

action in this case as evidence that a prompt appeal could permit resolution of the claim.

We conclude that, because of the constitutional issue involved and the time frame under which the district court must operate under the PLRA, it is exceedingly unlikely that an appeal of a district court order holding the automatic stay unconstitutional would be resolved before the district court ruled on the underlying motion to terminate. At the outset, we note that this case is unusual in that the events that render the appeal moot are uniquely within the control of the federal judiciary. We are therefore placed in the awkward position of having to adjudicate the consequences of our own actions. An examination of the process by which the PLRA operates nevertheless makes clear that when the district court concludes the automatic stay provision is unconstitutional, that issue is unlikely to be resolved on appeal before the district court determines the motion to terminate.

Even without the automatic stay provision, the PLRA clearly mandates the district court to resolve the motion to terminate as expeditiously as possible. We therefore feel it inappropriate to instruct the district court to delay a ruling on the motion to terminate absent compelling circumstances. On the other hand, in an instance where the district court rules the automatic stay provision unconstitutional, we are confronted with an issue that requires reflective and deliberative treatment. We are therefore hesitant to assert that a subsequent panel can resolve the case

12

without the benefit of oral argument. However, even with an expedited appeal, it could still take a few months to brief, process, hear and decide the appeal.

And, if the district court holds the stay provision to be unconstitutional when the thirty-day period has expired, we would expect a conscientious district court to rule on the underlying motion to terminate before we resolved the appeal on the constitutionality of the stay provision. Thus, the complained of injury suffered by the prison officials--that the district court does not apply the automatic stay--is too short in duration to be resolved on appeal prior to its expiration. We therefore conclude that the first element of the "capable of repetition, yet evading review" exception is met in this case.

B

With respect to the second element--whether a reasonable expectation exists that the same complaining party would be subjected to the same action again--the parties diverge considerably in their definitions of a "reasonable expectation." The prisoners focus on the prospect that, in this litigation, the prison officials will again be entitled to an automatic stay and conclude that it is unlikely. We need not address this argument, however, as the prison officials are likely to encounter the same situation in other litigation.

The prison officials intend to file termination motions under the PLRA in two other cases, Castillo v. Cameron County, No.

93-CV-260 (S.D. Tex., Brownsville Div.), and <u>Devonish v. Hauck</u>, No. SA-73-CA-59 (W.D. Tex., San Antonio Div.). In addition, the prison officials filed a termination motion in <u>Guajardo v. McAdams</u>, No. H-71-570 (S.D. Tex., Houston Div.), in 1997 that is still pending. In the light of these other cases, we hold that there is a reasonable expectation that the complaining party in this case, that is, the prison officials, will be subjected to the same action again.

C

Although the relief requested by the prison officials may not be likely to avail them in the current litigation, the prison officials clearly retain a cognizable legal interest in this appeal. Under the PLRA, the prison officials are, by the terms of the statute, entitled to the operation of an automatic stay if the district court has not ruled on the termination motion within thirty days. However, because an appeal of a district court order holding the stay unconstitutional is unlikely to be resolved before the district court rules on the termination motion, the prison officials are likely to be deprived the benefit of such a stay unless we address the issue now. We therefore hold the appeal before us not moot and turn to its merits.

III

We are confronted with appeals of two separate orders--the January Order, holding the amended § 3626(e) unconstitutional, and the June Order, refusing to reconsider the January Order in the

14

light of the government's proposed interpretation of § 3626(e). Because we find the government's argument persuasive and hold that the district court's June Order was erroneous, we do not address the constitutionality of the amended PLRA as that statute has been interpreted by the district court.

The government argues that the Amended Stay Provision is constitutional because, although the statute provides an "automatic" stay, it does not explicitly displace the district court's inherent equitable powers to suspend the stay--as the Government terms it, the inherent, equitable authority to "stay the stay." Thus, as the Amended Stay Provision does not absolutely mandate a particular judicial result, but instead permits the district court an opportunity to assay the equities of the case, it violates neither the Separation of Powers doctrine nor due process.

The district court rejected this argument in its June Order. To properly understand the district court's reasoning, we turn first to the language of 18 U.S.C. § 3626(e). We then look to two recent cases in other circuits that address this issue. Finally, we explain why we believe the government has the better interpretation.

A

It is necessary first to parse through the subsections of the amended stay provisions. The principal subsection instituting the stay, 18 U.S.C. § 3626(e)(2), reads:

15

> (2) Automatic Stay. — Any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period —
>
>> (A)(I) beginning on the 30th day after such motion is filed, in the case of a motion made under paragraph (1) or (2) of subsection (b); * * *; and
>> (B) ending on the date the court enters a final order ruling on the motion.

This subsection makes the stay "automatic" and clearly defines when it will take effect. The subsection is silent, however, with respect to whether the automatic stay, once it has taken effect, is subject to the equitable principles traditionally available to a federal court.[4]

The remaining two subsection of 18 U.S.C. § 3626(e) address actions by federal courts that can prevent the automatic stay from taking effect. Under 18 U.S.C. § 3626(e)(3), a district court may postpone the automatic stay for an additional sixty days. Finally, under 18 U.S.C. § 3626(e)(4), the parties may immediately appeal any ruling that delays the stay other than a postponement:

> (4) Order blocking the automatic stay. — Any order staying, suspending, delaying, or barring the operation of the automatic stay described in paragraph (2) (other than an order to postpone the effective date of the automatic stay under paragraph (3)) shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1) of title 28, United States Code, regardless of how the order is styled or whether the order is termed a preliminary or a final ruling.

---

[4]For a description of these principles, see Hadix v. Johnson, 144 F.3d 925, 937 (6th Cir. 1998).

16

We note that, while the statute permits interlocutory appeal of a suspension of the (e)(2) stay, the statute is silent with respect to the standard of review the circuit court should apply on the appeal of such a decision.[5]

B

Reading (e)(3) and (e)(4) together, the district court concluded that the amended automatic stay provision permits postponement but prevents any action by the district court that would otherwise bar the effect of the stay provision. In the Fifth Circuit, the interpretation of 18 U.S.C. § 3626(e) is an issue of first impression. We note, however, that the Sixth and the Seventh Circuits have addressed the issue, although the two circuits reached opposite results with respect to statutory interpretation: the Sixth Circuit, in Hadix v. Johnson, 144 F.3d 925 (6th Cir. 1998), upheld the government's reading of the statute, i.e., that the district court retained the equitable power to stay the stay; while the Seventh Circuit, in French v. Duckworth, 1999 WL 288267 (7th Cir. 1999), upheld the prison officials' reading that the district court could only postpone the stay pursuant to (e)(3).

The court in Hadix adopted the government's interpretation based on two separate rationales. First, the court noted that it was bound by the principle of statutory construction that a statute

---

[5]We take this evidence as leaving broad discretion in the Article III appellate court in reviewing the failure of the district court to adhere to the automatic stay provision.

will not limit "the equitable jurisdiction of federal courts absent a clear command from Congress to the contrary." 144 F.3d at 936. Relying on § 3626(e)(4), the court concluded that, because that subsection permits appeal of a delay or denial of the stay, Congress must have intended to permit district courts, in some circumstances, to deny or suspend the automatic stay. Hadix notes that, had Congress intended to bar the district court from denying the stay, the traditional remedy would have been one of mandamus rather than appeal. Id. The court then concluded that nothing in either 18 U.S.C. § 3626(e) or its legislative history "compels a departure from the courts' inherent power to stay judicial orders in order to achieve equity." Id. at 937-38.

The second rationale advanced by the court in Hadix for concluding that the statute's silence effectively preserved the district court's equitable power to "stay the stay," is the rule of statutory construction that "'where an otherwise acceptable construction of a statute would raise serious constitutional problems, the [courts] will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.'" Id. at 937. The court engaged in a lengthy analysis of the constitutionality of 18 U.S.C. § 3626(e) and concluded that, if interpreted to prevent a district court from equitably suspending an automatic stay, it would amount to a violation of the Separation of Powers doctrine. Id. at 938-45. Because such an interpretation would result in finding § 3626(e)

18

unconstitutional, the court adopted the government's proposed interpretation instead.

In French, the Seventh Circuit adopted the prison official's interpretation of § 3626(e), i.e., that the provision bars suspension or delay of the stay except as provided for in (e)(3), and concluded that the statute, as interpreted, was unconstitutional. The court characterized the decision in Hadix as adopting its position "[i]n order to avoid a finding of unconstitutionality." French, 1999 WL 288267 at *4. The court noted that "the qualification that the [statutory] language must be able to bear the constitutional interpretation [that the government proposed] is an important one. Courts cannot redraft statutes so that they read the way Congress might have written them, or should have written them." Id. at *5. Turning to the language of the stay provision, the court stated that "Congress used unequivocal words when it drafted (e)(2). . . . Congress specified that the stay would be automatic. Finally it specified not only a clear starting point, but also the ending point for the stay." Id.

The court then addressed the reasoning in Hadix that the (e)(4) remedy of appeal of an order barring the operation of the stay, instead of mandamus, evinced an intent to permit suspension of the stay:

> Why would Congress have included this in the statute, they reasoned, if it did not anticipate that courts would continue to have the power to issue equitable relief against them? In our view, there is an answer to this question. The drafters of the PLRA realized that they

19

> were skating close to the line in (e)(2), and they wanted to ensure that the issue that is now before us could be resolved in an interlocutory appeal.  The fact that a district court's effort to stay the (e)(2) stay can be appealed says nothing about what an appellate court must do once it has the case.

We note that the district court in this case relied on the same rationale when it addressed this argument in the June Order.

C

In deciding the case, we find the first rationale advanced in Hadix to be dispositive.  As that court noted, nothing in either the language of § 3626(e) or its statutory history indicates that Congress intended to supersede the district court's equitable power to stay judicial orders.  We acknowledge that the terms in 18 U.S.C. § 3626(e)(2), such as the word "automatic" and the description of the duration of the stay, could suggest that Congress intended the stay to take place without exception.  Furthermore, if read in a vacuum that excluded an understanding of general legal principles, it could read as if the drafters of § 3626(e)(2) had no thought of the possibility of a court exercising its equitable power to suspend the stay.  We think this argument fails, however, in the light of § 3626(e)(4), which expressly addresses the possibility of a district court suspending the stay. The district court's and the French court's explanation that Congress merely intended to permit an appeal of the constitutionality of the stay is certainly plausible.  It is equally plausible, however, that Congress understood that there

20

would be some cases in which a conscientious district court acting in good faith would perceive that equity required that it suspend the (e)(2) thirty-day stay and Congress therefore permitted the district court to do so, subject to appellate review.

Given our deference to the district court's equitable powers, we must select the latter interpretation. As the Supreme Court stated in Porter v. Warner Holding Co.: "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" 328 U.S. 395, 398 (1946) (quoting Brown v. Swann, 10 Pet. 497, 503 (1836)). In the case at hand, we find neither words nor inference that justify encroaching the district court's equitable powers.

Because we find the first rationale expressed in Hadix to be persuasive standing alone, we do not address the constitutionality of the automatic stay provision as interpreted by the prison officials and the prisoners. Although we recognize the rule of statutory construction requiring courts to construe statutes consistently with the Constitution, the application of that rule is not necessary here. As written, the statute simply does not state with sufficient specificity that the district court may not exercise its equitable power to stay judicial orders. There is

21

therefore no violation of the Separation of Power doctrine or the prisoners' due process rights.

As we noted previously, we have been given no statutory guidance with respect to the standard of review for such an appeal.[6] However, because the issue before us is the constitutionality of the automatic stay provision, we do not decide the appropriate standard of review beyond holding that the appellate court may address the merits of a district court's decision to suspend an (e)(2) stay and noting the traditional principles of equity should apply.

IV

We sum up. In this case, the district court held unconstitutional the automatic stay provision of the PLRA, as originally enacted and as amended. The district court later ruled on the prison officials' motion to terminate the consent decree, denying relief under the statute because the statute was unconstitutional. We therefore first had to consider whether the district court's later ruling rendered the instant appeal moot. We

---

[6]The district court and the French court seem to conclude that our standard of review is solely one of constitutionality-- i.e., if 18 U.S.C. § 3626(e) is constitutional, the district court must be reversed. The government, on the other hand, suggests that a district court has the authority to stay the (e)(2) stay on application by the plaintiffs in two limited circumstances: (1) when, under traditional preliminary injunction factors, plaintiffs have made a sufficient showing on the merits of the termination motion; and (2) when it would be inequitable to require the plaintiffs to make such a showing because circumstances beyond the plaintiffs' control make it impossible for plaintiffs to present sufficient information about current prison conditions.

22

find that it does not because the alleged injury incurred here--the prison officials' right to the operation of the automatic stay--is capable of repetition yet evading review.

Turning to the constitutionality of the automatic stay provision, we note that nowhere in the language of § 3626(e) is there either a direct statement or the basis for an inference that Congress intended to curtail the district courts' equitable powers. Under our reading of § 3626(e), the district court therefore retains its discretion to suspend the (e)(2) stay and § 3626(e) is therefore constitutional. For that reason, we hold that the district court erred in holding the provision unconstitutional.

For the foregoing reasons, the order of the district court is

R E V E R S E D.